UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTIN W. OTTO, SR. and ALMA LEE OTTO,

        Plaintiffs,

v.                     Case No.  8:12-cv-1515-T-33TGW

HILLSBOROUGH COUNTY, FLORIDA,

        Defendant.

_____/

**ORDER**

Pro se Plaintiffs Martin W. Otto, Sr. and Alma Lee Otto assert that Defendant Hillsborough County seized seventy-one of their purebred dogs on May 2, 2007, and again raided their property and seized "all" of their dogs, "mostly young puppies, mother dogs, new born puppies and ten pregnant females" on December 21, 2009. (Doc. # 38 at ¶¶ 8-13). The Ottos filed a scattershot Second Amended Complaint containing twenty-nine counts against the County on March 4, 2013. (Doc. # 38). The County filed its Motion to Dismiss (Doc. # 41) on March 7, 2013. After considering the Ottos' responsive submission (Doc. # 42), the Court grants the Motion to Dismiss and dismisses this action with prejudice.

**I.**   **Factual and Procedural Background**

Although the Ottos have been given multiple opportunities to file a cogent complaint, they have failed to do so. Nevertheless, the Court gathers from reviewing the exhibits to the Second Amended Complaint that the County took possession of seventy-one purebred dogs from the Ottos' premises on May 2, 2007, and thereafter, on December 21, 2009, took possession of the Ottos' remaining sixty-seven dogs, leaving the Ottos without a single dog. The Ottos assert that they are dog breeders and, due to the confiscation of their dogs, have been permanently deprived of their ability to earn a living. In addition, the Ottos assert that the County charged them approximately $7,000.00 for care of the dogs while the dogs were in the County's custody. The Ottos seek $25 million in compensatory damages as well as punitive damages and treble damages. (Doc. # 38 at 27-28).

Exhibit 7 to the Second Amended Complaint is an April 1, 2010, Order from the Thirteenth Judicial Circuit in and for Hillsborough County, Florida entered by the Honorable Nick Nazaretian, County Court Judge.[1]  That Order, issued

---

[1]  Because the exhibits are voluminous, they have not been filed electronically.  However, they are available for review in the Clerk's Office of this Court.

pursuant to an evidentiary hearing held on February 19, 2010, in which the Ottos personally participated, explains:

> On December 21, 2009, Hillsborough County Sheriff's Office's Deputy M. Cramer, and Cpl. Robert LaBarge went to the Respondent's residence . . . [and] found dogs living in their own feces in a dark barn, dogs in cages stacked upon cages, dogs living without adequate ventilation and dogs with possible veterinary medical problems. Hillsborough County Sheriff's Office called Hillsborough County Animal Services (HCAS) to respond to the scene.
>
> HCAS found cages stacked upon cages which were stacked upon other cages. The cages were filled with small dogs who were living in their own feces and urine. Feces and urine from the upper cages was seeping down on the dogs in the cages below. . . . Most cages held three (3) to four (4) dogs. There was no adequate lighting in the building and no ventilation. The dogs were clearly suffering from their confinement in filthy cages. The building smelled of excess feces and urine. The dog's fur was coated in feces and urine.
>
> Respondent Timothy E. Otto, freely and voluntarily signed an Owner Surrender document and surrendered all of the sixty-seven 67 dogs to HCAS. Respondent [Timothy] Otto stated that he owned all of the dogs and his parents, Respondents Alma Otto and Martin Otto did not own any of the dogs.
>
> . . . .
>
> Dr. Lisa Centonze examined the 67 dogs . . . . Sixteen (16) of the dogs had fur stained with urine or feces, and eighteen (18) had dirty coats and matted fur. Thirty seven (37) dogs had extremely long toenails. Twenty three (23) had

3

periodontal disease with several other dogs having missing teeth or necrotic teeth. Five (5) dogs had dirty ears. Nine (9) dogs were **heartworm positive**. Three (3) dogs had an eye infection, two (2) dogs had vaginal discharge, one dog (1) had a heart murmur, one dog had a patellar luxation and one puppy had a necrotic umbilical hernia. Five (5) of the dogs were cryptorchidic.

. . . .

On May 2, 2007, Respondent Alma Otto and Respondent Marin Otto were the subject of a previous HCAS investigation. At that time, the Respondents surrendered seventy one (71) dogs. The several dogs were housed in each cage, and several cages were stacked upon one another with the feces and urine from the top cages pouring down on the dogs in the lower cages. The aluminum cages were . . . in direct sunlight [with no] shelter from the blazing sun and rain.

. . . .

Of the seventy one (71) dogs that were seized on May 2, 2007, more than 90% of them had dental tarter or periodontal disease, missing teeth and severe dental disease, 25 % of the dogs tested **positive for heartworm and other intestinal worms**, 22% of the dogs had matted fur and five (5) of the dogs were in thin body condition. Dr. Roese listed several other severe instances of neglect and abuse in her report. Of the seventy one (71) dogs that were seized by HCAS on May 2, 2007, three (3) were euthanized for humane reasons. This included one (1) fourteen (14) year old Yorkshire terrier who with no teeth (sic) who had a dead fetus stuck in the birth canal.

(emphasis in original).

Based on these findings and after an evidentiary hearing, Judge Nazaretian permanently enjoined Alma, Timothy, and Martin Otto from owning animals in Hillsborough County.  Judge Nazaretian also ordered the Otto family to pay for "investigative costs, costs of care and veterinary medical costs" in the amount of $7,331.16 to Hillsborough County.

On July 9, 2012, the Ottos filed their initial Complaint against Hillsborough County. (Doc. # 1).  The County filed a Motion to Dismiss (Doc. # 14) on October 15, 2012, and this Court held a hearing on the Motion to Dismiss on December 19, 2012.  During the hearing, the Court explained in detail the requirements for filing a complaint in compliance with Rule 8 of the Federal Rules of Civil Procedure and also explained that the Ottos faced statute of limitations issues with respect to the County's actions in 2007.  The Court issued an Order on December 19, 2012, dismissing the Complaint without prejudice and with leave to amend. (Doc. # 25).  Among other things, this Court instructed:

> The Court will provide the Ottos with an
> opportunity to draft an amended complaint that
> complies with the pleading requirements of the
> Federal Rules of Civil Procedure.  The Complaint
> should assert in a separate count each claim

> founded on a separate transaction or occurrence.
> Ideally, each count should allege violations of
> only one statute or constitutional provision.
> Additionally, rather than including various
> quotations from statutes or legal treatises, the
> Ottos should reference the specific facts that
> support their allegations so as to provide notice
> to Defendant of what the Ottos' claims are and
> the grounds upon which those claims rest.

(Doc. # 25 at 5).

The Ottos have not complied with the Court's directive. On January 16, 2013, the Ottos filed their rambling, incoherent and deficient Amended Complaint. (Doc. # 28). The County once again filed a Motion to Dismiss (Doc. # 29) and thereafter, with leave of Court, the Ottos filed the Second Amended Complaint (Doc. # 38). For the third time, the County seeks dismissal of this case (Doc. # 41). The Ottos have responded to the third Motion to Dismiss. (Doc. # 42).

## II.  **The Second Amended Complaint**

The Second Amended Complaint asserts the following twenty-nine counts:

1.   Unreasonable Searches and Seizures- 4th Amendment

2.   Violation of Due Process Protections - 5th Amendment

3.   Cruel and Unusual Punishment - 8th Amendment

4.   Violation of Equal Protection Clause - 14th Amendment

5.   Trespass

6.  Document Fraud

7.  Damage to Animal Enterprise

8.  Damage to Animal Enterprise

9.  Deprivation of Rights under Color of Law

10. Fictitious, or Fraudulent Statement, False Writing or Document Fraudulent Statement

11. Extortion and Threats

12. False Official Certificates or Writing

13. Simulated Forms of Court or Legal Process

14. Defamation

15. Theft of Livestock

16. Searches without Warrant

17. Deprive Economic Benefit of Animal Property Seized

18. Loss of any Real or Personal Property Including Animals or Records

19. Official Records not Recorded

20. Injured in his Business or Property by Reason of a Violation of Section 1962

21. Illegal Costs of Caring for Surrendered Property

22. No Hearing for Custody 10 Days after Seizure

23. Grounds for Issuance of Search Warrant

24. No Inspection Warrants

25. Fraud on the Court

26.  Slander

27.  Frauds and Swindles

28.  Services of a Court Reporter

29.  Sale or Receipt of Stolen Livestock

The County seeks the dismissal with prejudice of each count under Rule 12(b)(6), Fed. R. Civ. P., and other governing law.  In addition to asserting that the Second Amended Complaint fails to state a cognizable claim, the County also contends that such Complaint is a shotgun pleading and fails to comply with Rule 8, Fed. R. Civ. P.

## III. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do.  Factual allegations must be enough
> to raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings. "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court's consideration of the exhibits to the Second Amended Complaint does not require that the Court conduct summary judgment analysis.

IV.  **Analysis**

Although given multiple opportunities to cure identified deficiencies, the Ottos' Second Amended Complaint still fails to comply with Rule 8(a), Fed. R. Civ. P., which requires "(1) a short and plain statement of the grounds for the court's jurisdiction . . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."

Because a motion to dismiss is before the Court, the Court assumes that all the facts alleged in the Second Amended Complaint are true. <u>Twombly</u>, 550 U.S. at 555. Because the Ottos are proceeding pro se, the Court construes all complaint allegations liberally. <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). Even applying this lenient standard, however, the Second Amended Complaint fails utterly to meet the requirements of Rule 8(a).  A plaintiff's "pro se status in civil litigation generally will not excuse mistakes he makes regarding procedural rules." <u>Grills v. Phillip Morris USA, Inc.</u>, 645 F. Supp. 2d 1107, 1121 (M.D. Fla. 2009).  <u>See also</u> <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989) ("Once a <u>pro</u> <u>se</u> . . . litigant is in court, he is subject

to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

Nevertheless, the Court will examine each count below.

**A.    Claims for Violation of Criminal Statutes**

"Criminal statutes provide no basis for civil liability." Santiago v. Century 21, No. 1:12-cv-2792, 2013 U.S. Dist. LEXIS 43273, at *6 (N.D. Ala. March 27, 2013). Plaintiffs lack standing to enforce penal statutes.  "Only a federal or state prosecutor can file a criminal charge against a person or entity." Id.   Thus, it is appropriate to dismiss the following counts with prejudice because they seek redress under federal and state criminal statutes:

Count 6 for "document fraud" asserted pursuant to 8 U.S.C. § 1324c;

Count 7 for "Damage to animal enterprise" asserted pursuant to 18 U.S.C. § 43;

Count 8 for "Damage to animal enterprise" asserted pursuant to Florida Statute § 828.42;

Count 9 for "Deprivation of rights under color of law" asserted pursuant to 18 U.S.C. § 241;

Count 10 for "fictitious, or fraudulent statement, false writing or document fraudulent statement" asserted pursuant to 18 U.S.C. § 1001;

Count 11 for "Extortion and threats" asserted pursuant to Florida Statute § 836.05;

Count 12 for "False Official certificates or writings" asserted pursuant to 18 U.S.C. § 1018;

Count 13 for "Simulated forms of court or legal process" asserted pursuant to Florida Statute § 817.39;

Count 15 for "Theft of livestock" asserted pursuant to 18 U.S.C. § 677;

Count 16 for "Searches without warrant" asserted pursuant to 18 U.S.C. § 2236;

Count 18 for "loss of any real or personal property including animals or records" asserted pursuant to the Animal Enterprise Terrorism Act, 18 U.S.C. § 43;

Count 19 for "official records not recorded" asserted pursuant to 18 U.S.C. § 1021;

Count 27 for "Frauds and swindles" asserted pursuant to 18 U.S.C. § 1341; and

Count 29 for "Sale or receipt of stolen livestock" asserted pursuant to 18 U.S.C. § 2317.

**B.    Deficient and Implausible Federal Claims**

The Ottos purport to assert several federal counts that are not cognizable under the facts presented and are not germane to this action.  For instance, the Court

12

dismisses with prejudice, Count 3, for "Cruel and Unusual Punishment" brought pursuant to the Eighth Amendment to the United States Constitution.   That cause of action is simply unsupported by the facts of this case as the Ottos are not complaining about any aspect of detention or incarceration. See Ingraham v. Wright, 430 U.S. 651, 659 (1977)(Eighth Amendment rights only attach upon conviction).

Likewise, the Court dismisses with prejudice Count 17 for "Deprive economic benefits of animal property seized" asserted pursuant to the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131.   Although this case does involve animals, the AWA is completely inapplicable.   As discussed in 907 Whitehead St., Inc. v. Gipson, 701 F.3d 1345 (11th Cir. 2012), the AWA provides that the U.S. Department of Agriculture regulates certain animals that are exhibited, such as in zoos and museums.   The act also provides for the humane treatment of research animals.   See Int'l Primate Protection League v. Inst. for Behavioral Research, Inc., 799 F.2d 934 (4th Cir. 1986). In addition, as stated in Zimmerman v. Wolff, 622 F. Supp. 2d 240, 243-44 (E.D. Pa. 2008), "the AWA does not create a private cause of action and . . . Congress intended that only the Secretary of Agriculture be able to enforce the law."

The dismissal with prejudice of Count 26 is also required.  That count is labeled as "Slander" but seeks relief pursuant to 28 U.S.C. § 4101, the Securing the Protection of our Enduring and Established Constitutional Heritage Act (the "SPEECH Act").  As described in InvestorsHub.com, Inc. v. Mina Mar Group, Inc., No. 4:11-cv-9, 2011 U.S. Dist. LEXIS 87566, at *2 (N.D. Fla. June 20, 2011), the SPEECH Act seeks to preclude enforcement in the United States of any foreign defamation judgment based on foreign laws that provide less protection for freedom of speech than the United States.

The complained of seizure of the Ottos' animals has no relationship to a foreign judgment and, thus the federal SPEECH Act is inapplicable.  Furthermore, the Second Amended Complaint contains no allegations that could support a "slander" action against the County.  Instead, the Ottos contend: "We were slandered by the press who did not bother to check the facts . . .  My character was assassinated with complete disregard for any kind of journalistic ethics in the newspaper and on several channels of the television." (Doc. # 38 at ¶ 16).  The Ottos' contention that the "press" improperly characterized them in a negative light is not attributable to the County.

The Court likewise dismisses the Ottos' RICO claim, asserted in Count 20, with prejudice.   In this count, the Ottos allege:

> Count XX
> **Injured in his business or property by reason of a violation of section 1962**
> This is a claim for violation by the defendant of federal statute U.S. Title 18, United States Code, Sections 1961–1968
> **Any person Injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court.**
> Plaintiff repeats and re-alledges (sic) in paragraph 8 -27 and incorporates those Allegations herein by reference.

(Doc. # 38 at ¶ 51) (emphasis in original).

The Ottos' statement of their RICO claim, and the referenced factual allegations, have no bearing whatsoever on the elements required for stating a RICO claim. The four elements required to state a RICO claim are: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. Smart Sci. Labs. Inc. v. Promotional Mktg. Servs., No. 8:07-cv-1554, 2008 U.S. Dist. LEXIS 118270, at *11 (M.D. Fla. June 27, 2008)(citing Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282-83 (11th Cir. 2006)).

In Jackson, 372 F.3d at 1264, the court explained that "[a] RICO enterprise exists where a group of persons

associates, formally or informally, with the purpose of conducting illegal activity." The court further remarked that a successful "pattern of racketeering activity" charges that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." Id. (emphasis in original).

The Court determines that the Ottos' RICO claim asserted against the County is completely implausible. Furthermore, the operative complaint does not touch upon or even allude to any of the elements required to assert a successful RICO claim. Any RICO claim asserted under the facts alleged in this case would be specious and meritless. The Court finds that further amendment of this claim would be futile, warranting dismissal with prejudice.

### C.   Remaining Constitutional Claims

In Count 1, the Ottos claim that the County violated the Fourth Amendment by conducting unreasonable searches and seizures; in Count 2, the Ottos contend that the County violated the Fifth Amendment by ignoring due process protections; and in Count 4, the Ottos assert that the

County violated the equal protection clause of the Fourteenth Amendment.

To bring a federal constitutional claim against a state actor, a plaintiff must travel under 42 U.S.C. § 1983. Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 396 (1971). To bring an action under § 1983, a plaintiff must allege a deprivation of rights, privileges, or immunities secured by the federal Constitution or federal law and that the deprivation occurred under the color of state law. Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998) (internal citations omitted).

The Eleventh Circuit, however, has ruled that municipal liability under § 1983 is strictly limited. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)("The Supreme Court has placed strict limitations on municipal liability under Section 1983"). A municipality is not liable for wrongful actions taken by its officers, such as animal control officers described in this action, under the theory of respondeat superior. See Monell, 436 U.S. at 691. Rather, a municipality may be held liable for the actions of its employees when a municipal "official policy" causes a constitutional violation. Id. at 694-95.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691. Accordingly, a plaintiff pursuing a § 1983 action against a municipality must "identify a municipal policy or custom that caused his injury." Gold, 151 F.3d at 1350 (internal citations omitted).

As stated by the Court in City of Canton v. Harris, 489 U.S. 378 (1989), "[i]t is only when the execution of the government's policy or custom inflicts injury that the municipality may be held liable under Section 1983." Id. at 385. See also Mobley v. City of Tampa, No. 8:08-cv-1671, 2009 U.S. Dist. LEXIS 35510, at *4 (M.D. Fla. Apr. 6, 2009)(dismissing constitutional claims asserted by owner of seized dogs against the City of Tampa because "Plaintiff fail[ed] to establish that the City of Tampa was the moving force behind any alleged constitutional violation based on any policies or customs of the City."); Bloom v. Alvereze, 498 F. App'x 867, 877 (11th Cir. 2012)(affirming dismissal of § 1983 claims against Miami-Dade County in the context of an animal seizure case based on "the [district] court's correct determination that municipalities cannot be held liable for a § 1983 violation based upon respondeat

superior."); <u>Wilson v. Sarasota County Sheriff's Department</u>, No. 8:10-cv-489, 2011 U.S. Dist. LEXIS 7937, at *9 (M.D. Fla. Jan. 7, 2011)(dismissing Fourth Amendment claims predicated upon the seizure of pets due to the plaintiff's failure to identify "an unlawful policy or custom" that was the "moving force of the constitutional violation.").

Here, the Ottos failed to allege that a policy, practice, procedure or custom existed within the County that was the moving force behind the alleged constitutional injuries, and the Ottos' Constitutional claims asserted via § 1983 in Counts 1, 2, and 4 against the County are accordingly barred and subject to dismissal with prejudice. The Ottos have been given multiple opportunities to identify such a custom or policy and have utterly failed to do so.[2]

The exhibits to the Second Amended Complaint demonstrate that, on December 21, 2009, faced with extreme animal cruelty, the County obtained the voluntary consent of Timothy Otto to take the Ottos' abused and feces-coated dogs. The dogs were in need of emergency medical care and

---

[2] The Ottos do not contest that the allegations concerning the County's actions in 2007 are time barred. (Doc. # 38 at ¶ 6).

were housed in deplorable conditions. Exigent circumstances were present and justified the actions taken. Thereafter, the Ottos participated in a post deprivation evidentiary hearing and an Order was subsequently issued barring the Ottos from further animal ownership in Hillsborough County. It appears that the Ottos also participated in an appellate process.

The Court determines that the Ottos should not be permitted to further amend the Complaint in an effort to allege that a custom or policy of the County was the moving force behind the Ottos' alleged constitutional injuries. The factual allegations contained in the Ottos' operative complaint and the exhibits attached thereto simply do not support such an allegation. This Court is not inclined to buttress insufficient claims in favor of the Ottos merely because they are proceeding pro se. If the Court were of the opinion that such claims could be properly and plausibly asserted under the facts presented, the Court would not hesitate to allow further amendment. The Court, however, is not convinced. Counts 1, 2, and 4 are therefore dismissed with prejudice.

D.   **Supplemental Jurisdiction**

Having dismissed each of the Ottos' federal claims, the Court determines that it is appropriate to decline to exercise supplemental jurisdiction over the remaining civil claims, which are asserted under state law.  Specifically, these claims are asserted in Count 5 (for Trespass), Count 14 (for Defamation), Count 21 (for Illegal costs of caring for Surrendered property under Florida Statute § 440.14), Count 22 (for No hearing for custody 10 days after seizure under Florida Statute § 828.073), Count 23 (for Grounds for issuance of search warrant under Florida Statute § 933.02), Count 24 (for No inspection Warrants under Florida Statute § 933.20), Count 25 (for Fraud on the Court), and Count 28 (for Services of a court reporter).

Diversity jurisdiction is not present in this case, and the Court finds that judicial economy and fairness to the parties are not served by retaining jurisdiction over these state law claims.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  The Motion to Dismiss (Doc. # 41) is **GRANTED**.

(2)  This action is dismissed with prejudice.

(3)   The Clerk is directed to terminate all pending motions

and to **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this

6th day of June, 2013.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel and Parties of Record